# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **ERNEST KIRKSEY,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) **Case No.: 2:08-CV-452-VEH** |
| | ) |
| **UPS GROUND FREIGHT, INC.,** | ) |
| | ) |
| **Defendant.** | ) |

## MEMORANDUM OPINION

**I.    INTRODUCTION**

This case concerns a claim of retaliation in violation of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2901 *et seq*. The Plaintiff, Ernest Kirksey, claims that the Defendant, UPS Ground Freight Inc., discharged him after learning that he had been injured in an accident on the job. The Defendant claims that it discharged the Plaintiff because it was his second serious preventable accident in less than six months.

Before the Court is the Defendant's Motion for Summary Judgment (Doc. 25), filed on March 2, 2009. The Defendant advances two arguments in support of this motion: (1) that the Plaintiff cannot establish the causal relationship element of his *prima facie* retaliation claim and; (2) that the Plaintiff cannot establish that the

supposed reasons for his termination were a pretext for retaliation.

As discussed in greater detail below, the Court finds that the Plaintiff cannot establish the causal element of his *prima facie* case and that summary judgment is due to be **GRANTED** in favor of the Defendant on this ground. Alternatively, because the Plaintiff does nothing more than disagree with the Defendant's proffered reasons for termination and otherwise points to no evidence that establishes pretext, the Court finds that summary judgment is similarly due to be **GRANTED** in favor of the Defendant.

## II.   SUMMARY JUDGMENT STANDARD

Under Fed. R. Civ. P. 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000).

The party moving for summary judgment always bears the initial responsibility of informing the court of the basis for its motion, and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once the moving party has met its burden,

Rule 56(c) requires the nonmoving party to go beyond the pleadings and, by its own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. *Id.* at 324.

The substantive law will identify which facts are material and which are irrelevant. *Chapman*, 229 F.3d at 1023; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the nonmovant. *Chapman*, 229 F.3d at 1023; *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *Chapman*, 229 F.3d at 1023.

The method used by the party moving for summary judgment to discharge its initial burden depends on whether that party bears the burden of proof on the issue at trial. *See Fitzpatrick*, 2 F.3d at 1115-17 (citing *U.S. v. Four Parcels of Real Property*, 941 F.2d 1428 (11th Cir. 1991)(*en banc*)). If the moving party bears the burden of proof at trial, then it can meet its burden on summary judgment only by presenting positive evidence that demonstrates the absence of a genuine issue of material fact; i.e., facts that would entitle it to a directed verdict if not controverted at trial. *Fitzpatrick*, 2 F.3d at 1115. Once the moving party makes such a showing, the burden shifts to the nonmoving party to produce significant, probative evidence

demonstrating a genuine issue for trial.

If the moving party does not bear the burden of proof at trial, it can satisfy its initial burden on summary judgment in either of two ways. First, the moving party may produce affirmative evidence negating a material fact, thus demonstrating that the nonmoving party will be unable to prove its case at trial. Once the moving party satisfies its burden using this method, the nonmoving party must respond with positive evidence sufficient to resist a motion for a directed verdict at trial.

The second method by which the moving party who does not bear the burden of proof at trial can satisfy its initial burden on summary judgment is to <u>affirmatively</u> show the absence of any evidence in the record in support of a judgment for the nonmoving party on the issue in question. This method requires more than a simple statement that the nonmoving party cannot meet its burden at trial but does not require evidence negating the nonmovant's claim; it simply requires the movant to point out to the court that there is an absence of evidence to support the nonmoving party's case. *Fitzpatrick*, 2 F.3d at 1115-16. If the movant meets its initial burden by using this second method, the nonmoving party may either point to evidence in the court record, overlooked or ignored by the movant, sufficient to withstand a directed verdict, or the nonmoving party may come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged

evidentiary deficiency. However, when responding, the nonmovant can no longer rest on mere allegations, but must set forth evidence of specific facts. *Lewis v. Casey*, 518 U.S. 343 (1996) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)).

## III. FACTUAL AND PROCEDURAL HISTORY[1]

Defendant UPS Ground Freight, Inc. ("UPSF") is in the business of providing regional, interregional, and long-haul transportation of palletized and heavy less-than truckload shipments. (Doc. 25, Prettyman Decl. at ¶ 1.) In 2006, UPSF acquired another shipping company, Overnight Express, who had employed Plaintiff, Ernest Kirksey, since 1995. (Doc. 25, Kirksey Dep. at 37:22-38:1; Prettyman Decl. at ¶ 3.) While working at Overnight Express, and later UPSF, Kirksey was employed, at all relevant times, as a driver of a UPSF tractor-trailer (Doc. 25, Kirksey Dep. at 97:4-6.)

---

[1] Ordinarily, the undersigned judge requires the parties to comply with Appendix II of the Uniform Initial Order entered at docket entry number 15 of the instant case. Defendant followed the Court's instructions as described in Appendix II. Plaintiff, however, understandably followed a prior order, entered before this case was reassigned to the undersigned judge (Doc. 12), which stated that the parties should not follow Appendix II in any summary judgment briefing. The Court intended for its Order at docket entry number 15 to supplant the prior Order. However, in order to avoid the needless delay in waiting for the Plaintiff to refile his brief, the Court reviewed the evidentiary submissions of both parties in determining the facts for purposes of the instant motion, accepting the Plaintiff's version when a bona fide dispute existed. The Court rejects Defendant's argument that all of its facts should be deemed admitted as a result of Plaintiff's noncompliance with the Uniform Initial Order. (Doc. 27 at 1 n.1.)

These are the facts for summary judgment purposes only. They may not be the actual facts. *See Cox v. Administrator U.S. Steel & Carnegie*, 17 F.3d 1386, 1400 (11th Cir. 1994) ("'[W]hat we state as 'facts' in this opinion for purposes of reviewing the rulings on the summary judgment motion [ ] may not be the actual facts.'") (citation omitted).

On the night of August 27, 2007, Kirksey, while driving a UPSF tractor-trailer, was involved in an accident, wherein he ran into the rear end of a vehicle that was in the same lane of traffic as Kirksey's tractor-trailer. (Doc. 25, Kirksey Dep. at 96:12-21.) After running into the stopped vehicle in his lane, Kirksey drove his vehicle into the median of the interstate, in order to avoid hitting other vehicles, crossed the opposite-bound lane, and careened down an embankment before coming to rest in some trees. (Doc. 25, Kirksey Dep. at 97:18-99:15.) The tractor was totaled, and the trailer was damaged to a lesser extent. (Doc. 25, Kirksey Dep. at 103:18-104:19.) Kirksey's fuel tank was also damaged and leaked fluids into the general area. (Doc. 25, Kirksey Dep. at 105:9-17.) The accident ultimately cost UPSF approximately $80,000. (Doc. 25, Prettyman Decl. at ¶ 5.)

As a result of this accident, Kirksey was taken to a hospital to receive stitches in his lower lip. (Doc. 25, Kirksey Dep. at 108:17-25.) Kirksey's wife, Kim Kirksey ("Mrs. Kirksey") was informed via telephone from a bystander at the scene of the accident that her husband had been in an accident. (Doc. 26, Kirksey Decl. at ¶ 1.) She then called the UPSF terminal and explained that her husband had been in an accident and that he had been injured. (Doc. 26, Kirksey Decl. at ¶ 1.) Eventually, Mrs. Kirksey found her husband early on the morning of August 28, 2007, at the

hospital where he was receiving treatment. (Doc. 26, Kirksey Decl. at ¶ 2.) Shortly after she located her husband, Mrs. Kirksey called Keith Carter ("Carter"), one of her husband's supervisors, and informed him about her husband's injured condition. (Doc. 26, Kirksey Decl. at ¶ 4.)

The above-described accident was Kirby's third in less than two years, and his second preventable accident in less than six months. (Doc. 25, Kirksey Dep. at 198:15-199:5; Prettyman Decl. at ¶ 6.) Kirksey had also been involved in an accident in 2002, which resulted in a lawsuit being filed against Overnight Express. (Doc. 25, Kirksey Dep. at 232:4-13.) He had also been involved in other, less severe, accidents in December 2005 and September 2006. (Doc. 25, Kirksey Dep. at 219:7-17; Exs. 16-17.) Kirksey had also received a citation for speeding a few months before the August 2007 accident. (Doc. 25, Ex. 11.) As a result of a May 2007 accident that was determined to be preventable, Kirksey was issued a warning and was required to participate in space and visibility retraining. (Doc. 25, Exs.10, 12.)

Steve Prettyman ("Prettyman"), the Regional Service Center Manager for UPSF's Trussville, Alabama location, was made aware of the accident in the early hours of August 28, 2007. (Doc. 25, Prettyman Decl. at ¶¶ 1, 4.) A representative from UPSF was sent to investigate the scene of the accident–as is customary at UPSF. (*Id.* at ¶ 4.) The representative gathered information from the accident scene,

including the police accident report.  (*Id.* at ¶ 5.)  Based on the information gathered at the scene of the accident and Kirksey's overall driving record, on August 29, 2007, Prettyman decided to terminate Kirksey.  (*Id.* at ¶¶ 6-7.)

Following the accident, on August 30, 2007, Kirksey spoke with Carter, over the phone.  (Doc. 25, Kirksey Dep. at 69:1-14.) During this conversation, which was his first with anyone at UPSF, Kirksey informed Carter that his leg was injured and that he could not walk or drive himself to work.  (Doc. 25, Kirksey Dep. at70:1-8.)  Carter explained that the company needed to get his accident forms filled out and arranged to fax Kirksey some of the relevant documents.  (Doc. 25, Kirksey Dep. at 72:9-73:12.)

Prettyman spoke with Kirksey over the phone on September 6, 2007, and requested that he come to the facility to sign an accident report.  (*Id.* at ¶ 8.)  He did not inform Kirksey of his decision to terminate him because he wished to inform Kirksey of the decision in person.  *Id.*  During the phone conversation, Kirksey told Prettyman that he could not come into  the facility because he had injured his leg in the accident; Kirksey ultimately agreed to come in on September 10, 2007.  (*Id.*)

Kirksey's wife drove him to the UPSF facility on September 10, 2007, where he had a meeting with Prettyman in his office.  (Doc. 25, Kirksey Dep. at 112:9-113:2.)  In the meeting, Prettyman had Kirksey sign a form indicating that he had

8

been in two preventable accidents in the past twelve months. (Doc. 25, Def's Ex. 3.) Prettyman also informed Kirksey orally that, due to the severity of the accident, he was going to be terminated. (Doc. 25, Kirksey Dep. at 121:25-122:11.)

UPSF's Employee Rule Book (Doc. 25, Ex. 4) provides that "[a]ny employee [engaging in] the following misconduct . . . may [be] subject . . . to termination for a first offense." (Doc. 25, Ex. 4 at 28.) Among the categories of "misconduct" listed in the handbook are "Safety and Health Violations." (*Id.*) Specifically, this section indicates that "[o]ne serious preventable accident, depending on the severity," may be grounds for termination. (*Id.*) Kirksey was informed of this policy at his meeting with Prettyman. (Doc. 25, Kirksey Dep. at 125:3-17.)

UPSF's rule book also states that "[a]ny driver involved in a preventable accident, <u>at a minimum</u>, shall be counseled by his or her service center manager." (Doc. 25, Ex. 4 at 59 (emphasis added).) Additionally, this section also specifies that a driver involved in two preventable accidents within a year "shall, <u>at a minimum</u>, be required to attend a driver's certification [course provided by UPSF]." (*Id.* (emphasis added).)

Kirksey filed this lawsuit on January 22, 2008, in the Circuit Court of Jefferson

County, Alabama.² (Doc. 1, Ex. A.) UPSF removed the case to this Court on March 13, 2008, and the case was assigned to the Honorable U.S. District Judge U.W. Clemon. (Doc. 1.) In the Complaint, Kirksey alleged counts of wrongful termination in violation of Alabama's worker's compensation statutory regime, as well as a count for retaliation in violation of the Family Medical Leave Act of 1983 ("FMLA"), 29 U.S.C. § 2601 et seq. (Doc. 1, Ex. A.) Judge Clemon remanded the worker's compensation claims on April 22, 2008, but retained jurisdiction over the FMLA claim. (Doc. 9.) This case was reassigned to the undersigned judge on February 5, 2009. Following the completion of discovery, UPSF filed the instant Motion for Summary Judgment (Doc. 25) on March 2, 2009.

The parties have fully briefed the issues (Docs. 25-27) and this Court has fully considered the arguments raised by each of the parties. The Court now takes the pending motion under submission.

---

² The parties also spent time in their briefs developing facts related to Kirksey's administrative appeal, provided as part of UPSF's employee dispute resolution. (Docs. 25 at ¶¶ 29-35; 26 at ¶¶ 12-15.) Neither of the parties relied on this information in the legal arguments in their briefs in support of or in opposition to the pending motion and neither party has explained why that information is relevant to the instant case. Defendant has not argued that Kirksey's administrative appeals process is the exclusive means to remedy his complaint. Further, it is disputed which administrative process actually applied to Kirksey. (*Id.*) In any event, Kirksey is correct in contending that he was entitled to file his claim under the FMLA. (*See* Doc. 26, Ex. 20.)

## IV.   ANALYSIS

The FMLA grants an eligible employee the right to take up to 12 "workweeks" of unpaid leave annually for any one or more of several reasons, including "[b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). It also creates a private right of action to seek equitable relief and money damages against employers who "interfere with, restrain, or deny the exercise of or the attempt to exercise" FMLA rights. 29 U.S.C. §§ 2615(a)(1), 2617(a).  The Eleventh Circuit has stated that the FMLA recognizes two types of claims: "interference claims, in which an employee asserts that his employer denied or otherwise interfered with his substantive rights under the Act, and retaliation claims, in which an employee asserts that his employer discriminated against him because he engaged in activity protected by the Act." *Strickland v. Water Works and Sewer Bd. of the City of Birmingham*, 239 F.3d 1199, 1206 (11th Cir.2001).

Regarding interference claims, the Eleventh Circuit set forth the relevant standards in *Drago v. Jenne*, 453 F.3d 1301, 1305- 6 (11th Cir. 2006):

> "Among the substantive rights granted by the FMLA to eligible employees are the right to '12 workweeks of leave during any 12-month period. . . . [b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee,' 29 U.S.C. § 2612(a)(1), and the right following leave 'to be

11

restored by the employer to the position of employment held by the employee when the leave commenced' or to an equivalent position, 29 U.S.C. § 2614(a)(1)." *Strickland*, 239 F.3d at 1206. To state a FMLA interference claim, a plaintiff must demonstrate that he was entitled, under the FMLA, to a benefit that he was denied. *See Strickland*, 239 F.3d at 1207.

In contrast, a plaintiff bringing a retaliation claim must demonstrate "that his employer's actions were motivated by an impermissible retaliatory or discriminatory animus." *Strickland*, 239 F.3d at 1207 (internal quotations and citations omitted). To succeed on a retaliation claim, an employee must demonstrate that his employer <u>intentionally</u> discriminated against him in the form of an adverse employment action for exercising an FMLA right. *Id.* The Eleventh Circuit specified in *Strickland* that, in the absence of direct evidence[3], a claim of retaliation brought under the FMLA should be analyzed under the same burden-shifting framework as is used in Title VII cases. *Id.* In order to state a *prima facie* case of retaliation, an employee must prove that (1) he engaged in a statutorily protected activity; (2) he suffered an adverse

---

[3] "'[D]irect evidence' refers to a type of evidence which, if true, would require no inferential leap in order for a court to find [retaliation]." *Bass v. Board of County Com'rs, Orange Coutny, Fla.*, 256 F.3d 1095, 1111 (11th Cir. 2001), *abrogated on other grounds by Crawford v. Carroll*, 529 F.3d 961 (11th Cir. 2008). In his brief, Kirksey makes passing mention of an argument that his claim is established by direct evidence. (Doc. 26 at 23 ("Plaintiff has shown direct evidence of retaliation and interference with Plaintiff's Rights under FMLA [sic]."). However, Kirksey has directed the Court's attention to no such "direct evidence" and the Court's own review of the record has not found any such type of evidence. Consequently, to the extent that this statement represents an argument that Kirby can avoid summary judgment through the existence of direct evidence of retaliation, the Court rejects the argument.

employment decision; and (3) there was some causal relation between the two events. *Id.* After the plaintiff has established this *prima facie* case, the employer has an opportunity to articulate a legitimate nonretaliatory reason for the challenged employment action. *Coutu v. Martin County Bd. of County Comm'rs*, 47 F.3d 1068, 1073, 1075 n. 54 (11th Cir.1995). Ultimately, the plaintiff must bear the burden of proving retaliation by a preponderance of the evidence and that the legitimate non-retaliatory reason provided by the employer is a pretext for prohibited retaliatory conduct. *Goldsmith v. Bagby Elevator Co., Inc.*, 513 F.3d 1261, 1278 (11th Cir.2008).

The only type of FMLA claim at issue here is a retaliation claim. Although Kirksey states in his brief that "Plaintiff has shown direct evidence of retaliation and interference with Plaintiff's rights under [the] FMLA," he only mentions the word "interference" in a sentence devoted to avoiding *McDonnell-Douglass* burden-shifting and has otherwise only raised arguments regarding a retaliation claim in his brief. (Doc. 26 at 23.) Additionally, in Count Two of his Complaint, entitled "Wrongful Termination," Kirksey states that "[UPSF] <u>retaliated against Plaintiff</u> and otherwise violated [Plaintiff's] [FMLA rights] by terminating employment and employment [benefits], and by taking adverse employment actions against Plaintiff. Accordingly, [USPF] wrongfully discharged Plaintiff and interfered with [Plaintiff's]

entitlements as a [UPSF] employee." (Doc. 1 at 13, ¶ 15 (emphasis added).) Beyond mentioning the word "interference" in his Complaint in a paragraph that begins with allegations of retaliation and in a sentence in his brief explaining why he has a "direct evidence" claim and that *McDonnell-Douglas* burden-shifting does not apply, an interference claim has otherwise been unmentioned by either Kirksey or UPSF. In light of these facts, the Court finds that any interference claim, if any, has been subsumed by his retaliation claim. Accordingly, the Court turns to Kirksey's retaliation claim.

    **A.    Kirksey cannot state a *prima facie* case of retaliation under the FMLA.**

UPSF first argues that Kirksey cannot establish a *prima facie* case of retaliation because the undisputed facts do not establish a causal connection between the decision to terminate Kirksey and his request for FMLA leave. (Doc. 25 at 19.) Specifically, it claims that because Prettyman made the decision to terminate Kirksey on August 29, 2007, and because Kirksey's first contact with the company was on August 30, 2007, the requisite causal relationship cannot be established. (Doc. 25 at 20.)

UPSF is correct that in arguing that the element of causation is precluded, since in *Strickland* the Eleventh Circuit explained that the causation element of a retaliation

14

case cannot be established when "the unrebutted evidence is that the decision maker did not have knowledge that the employee had engaged, or was attempting to engage, in protected conduct." 239 F.3d at 1207 (quoting *Brungart v. Bellsouth Telecommunications, Inc.*, 231 F.3d 791, 799 (11th Cir. 2000)). Although there is evidence in the record that Kirksey's wife called Kirksey's supervisor at UPSF, Keith Carter, shortly after the accident and informed Carter that Kirksey was injured (Doc. 26, Mrs. Kirksey Decl), the unrebutted evidence is that Prettyman, the decisionmaker who decided to terminate Kirksey, did not have knowledge of Kirksey's need for medical leave until Thursday, September 6, 2007. (Doc. 25, Prettyman Decl. at ¶ 8.) In *Brungart v. Bellsouth Telecommunications, Inc.*, 231 F.3d 791, 799 (11th Cir. 2000), the Eleventh Circuit explained that the decisionmaker must have knowledge of the protected activity. *Id.* (citing *Clover v. Total System Services, Inc.*, 176 F.3d 1346, 1355-1356 (finding that a decisionmaker must be aware of the protected activity and noting that "[a] jury finding that [the decisionmaker] was aware of [the plaintiff's] protected conduct must be supported by reasonable inferences from the evidence, not mere speculation")). Merely inferring that Prettyman knew of Kirksey's need for leave based on Carter's knowledge of his injuries would be impermissible speculation and not the product of reasonable inference, as required by *Clover*. Since UPSF has presented unrebutted evidence that Prettyman did not

have this knowledge, causation cannot be established and Kirksey cannot establish the third element of his *prima facie* case. Therefore, summary judgment is due to be **GRANTED** in favor of UPSF.

> **B**. **Alternatively, Kirksey cannot demonstrate that UPSF's proffered reasons for his termination were pretextual.**

Even if Kirksey could establish his *prima facie* case, as explained *supra*, *Strickland* held that FMLA cases and Title VII cases are to be analyzed under the same framework. Thus, if a plaintiff is able to establish a *prima facie* case of retaliation, "the defendant [could] 'articulate some legitimate, nondiscriminatory reason for the [adverse employment action].' If this is accomplished, the plaintiff [could] then attempt to demonstrate that the proffered reason was in fact merely a pretext for the defendant's actions." *Silvera v. Orange County Sch. Bd.*, 244 F.3d 1253, 1258 (11th Cir. 2001) (quoting *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)).

Assuming *arguendo* that Kirksey established his *prima facie* case, UPSF presents a legitimate nonretaliatory reason for terminating Kirksey and argues that it fired Kirksey because of his prior accidents, not because of his injuries or request for FMLA leave. (Doc. 25 at 22.) Kirksey responds that "the proffered reasons for Plaintiff's termination are untrue, pretextual and intentional." (Doc. 26 at 23-24.)

In discussing pretext, the Eleventh Circuit Court has explained that

> [t]o show that the employer's reasons were pretextual, the plaintiff must demonstrate "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence."

*Cooper v. Southern Co.,* 390 F.3d 695, 725 (11th Cir. 2004) (quoting *Combs v. Plantation Patterns*, 106 F.3d 1519, 1538 (11th Cir.1997)).

"[F]or an employer to prevail the jury need not determine that the employer was correct in its assessment of the employee's performance; it need only determine that the defendant in good faith believed plaintiff's performance to be unsatisfactory and that the asserted reason for the discharge is therefore not a mere pretext for discrimination." *Moore v. Sears, Roebuck & Co.*, 683 F.2d 1321, 1323 n.4 (11th Cir. 1982). "'A plaintiff employee may not establish that an employer's proffered reason is pretextual merely by questioning the wisdom of the employer's reason' as long as 'the reason is one that might motivate a reasonable employer.'" *Pennington v. City of Huntsville*, 261 F.3d 1262, 1267 (11th Cir. 2001) (quoting *Combs v. Plantation Patterns,* 106 F.3d 1519, 1543 (11th Cir.1997) ("[F]ederal courts do not sit to second-guess the business judgment of employers.")). "The employer's stated legitimate reason . . . does not have to be a reason that the judge or jurors would act on or approve." *Nix v. WLCY Radio/Rahall Communications*, 738 F.2d 1181, 1187

(11th Cir.1984). Further, "[p]rovided that the proffered reason is one that might motivate a reasonable employer, an employee must meet that reason head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason." *Chapman v. AI Transport*, 229 F.3d 1012, 1030 (11th Cir. 2000).

In his brief, Kirksey has done little more than quarrel with UPSF's proffered reasons for his termination. Specifically, Kirksey argues that "Defendant's own policy book permits a number of permissible accidents over a period of time," and that "Plaintiff is within the guidelines for the number of permissible accidents, regardless of Defendant's more recent reasoning and wisdom for terminating Mr. Kirksey." (Doc. 26 at 25 (referring to Doc. 25, Ex. 4 at 59).) However, UPSF's policies clearly state that even one serious accident can result in termination. (Doc. 25, Ex. 4 at 28.) Thus, Kirksey's argument is simply incorrect, as it overlooks the possibility that UPSF could impose a <u>more severe</u> punishment than that suggested in the cited provision of its policy book, even though the policies referred to by Kirksey clearly state that the punishments are a "minimum." (Doc. 25, Ex. 4 at 59.)

Kirksey also argues that he "had never received any rating or had any discussion that any of his previous accidents had been severe or not severe, and after not even one of Mr. Kirksey's previous accidents . . . had [he] been injured." *Id.* This argument calls for the Court to substitute its own judgment for that of Kirksey's

18

employer and, as explained previously, this is not a proper way to demonstrate pretext. *See Chapman*, 229 F.3d at 1030.

Legal authority for Kirksey's argument as to pretext is almost entirely absent, but he does cite to *Gamba v. City of Sunrise*, 157 Fed. Appx. 112 (11th Cir. 2005) (*per curiam*), and states that it "is on point to a few issues in Plaintiff's favor." (Doc. 26 at 25.) Besides the fact that this case is an unreported decision[4], it does not decide any "issues"[5] in Plaintiff's favor. In fact, the circumstances in *Gamba* support the result reached by this Court in the instant case in that *Gamba* offered no evidence of pretext other than pointing to the temporal proximity of his request for leave and his termination. *Id.* at 112. Faced with these facts, the Eleventh Circuit wrote that "[w]here the employer produces significant evidence of the employee's poor performance, it is not enough that the request for leave and the termination are closely related in time." *Id.*[6]

Although *Gamba* is not binding precedent, it is persuasive in this case because Kirksey has done nothing besides establish the temporal proximity between his injury

---

[4] Unreported cases from the Eleventh Circuit are not binding precedent for this Court. *See Baker v. Birmingham Bd. of Educ.*, 531 F.3d 1336, 1338 (11th Cir. 2008).

[5] Kirksey did not specify which" issues" *Gamaba* decides in his favor.

[6] The Court cannot determine from the opinion whether the decision to terminate Gamba was made <u>before</u> (as in this case) or <u>after</u> the decisionmaker learned of Gamba's request for FMLA leave.

and his discharge (as part of the third element in his *prima facie* case of retaliation). UPSF, on the other hand, has produced substantial evidence that it discharged Kirksey for legitimate, non-retaliatory reasons, i.e. his severe accident that cost his employer approximately $80,000, as well as the litany of other incidents that cost UPSF both time and money. There are no facts from which a reasonable jury could infer that Kirksey carried his ultimate burden of demonstrating pretext. Consequently, UPSF's motion for summary judgment is due to be **GRANTED** on this alternative ground.

## V. CONCLUSION

In light of the above, the Court finds that UPSF's Motion for Summary Judgment (Doc. 25) is due to be **GRANTED**. Kirksey cannot demonstrate that the causal element of his *prima facie* case is established and, alternatively, Kirksey has not produced any evidence that would permit the inference that UPSF's proffered reasons for his termination were merely a pretext for retaliation. A separate order consistent with this Memorandum Opinion will be entered.

**DONE** and **ORDERED** this the 23rd day of April, 2009.

**VIRGINIA EMERSON HOPKINS**
United States District Judge